1
2
3
4
5
6
7           **UNITED STATES DISTRICT COURT**

8           **CENTRAL DISTRICT OF CALIFORNIA**

9

10  LaTOYA McCALEB, et al.,                    )        Case No. CV 13-6444 FMO (JCx)
                                               )
11              Plaintiffs,                     )
                                               )        **ORDER PRELIMINARILY APPROVING**
12       v.                                     )        **CLASS ACTION SETTLEMENT AND**
                                               )        **CLASS NOTICE, AND SETTING FINAL**
13  DT CREDIT COMPANY, LLC,                     )        **FAIRNESS HEARING**
                                               )
14              Defendant.                      )
                                               )
15  _____ )

16          Having reviewed and considered all the briefing filed with respect to plaintiffs LaToya

17  McCaleb ("McCaleb") and Gloria James' ("James") (collectively, "plaintiffs") renewed Motion for

18  Preliminary Approval of Class Action Settlement ("Renewed Motion"), and the oral arguments

19  presented to the court on April 17, 2014, and June 5, 2014, the court rules as follows.

20                                    **INTRODUCTION**

21          Plaintiffs filed this class action in state court against DT Credit Company, LLC ("DT Credit")

22  on July 22, 2013.  (See DT Credit's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332,

23  1441 and 1446 and the Class Action Fairness Act ("NOR"), Exhibit ("Exh.") A ("Complaint")).

24  Plaintiffs' Complaint asserts claims against DT Credit for:  (1) violations of the Rees-Levering

25  Automobile Sales Finance Act, Cal. Civ. Code §§ 2981, et seq. ("Rees-Levering Act"); and (2)

26  violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.  (See

27  Complaint at ¶¶ 39-54).  DT Credit removed the action to this court on September 3, 2013,

28  pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (See NOR at 3).

1    This matter first came before the court on April 17, 2014, on plaintiffs' Motion for Preliminary

2    Approval of Class Action Settlement.  The court denied preliminary approval at that time, and

3    instead ordered the parties to file a renewed motion with additional briefing and supporting

4    evidence, and to correct deficiencies in the proposed settlement agreement.  (See Court's Order

5    of April 17, 2014).  Pursuant to the Court's Order of April 17, 2014, plaintiffs filed the Renewed

6    Motion on May 2, 2014.  DT Credit filed a Notice of Non-Opposition of Relief Sought in Plaintiffs[']

7    Motion for Preliminary Approval ("Non-Opp.") on May 15, 2014.  On June 5, 2014, the court held

8    a hearing on plaintiffs' Renewed Motion.  The court again denied preliminary approval and ordered

9    to parties to submit supplemental briefing addressing the court's concerns regarding the

10   settlement terms.  (See Court's Order of June 5, 2014).  On June 13, 2014, plaintiffs filed a

11   Supplemental Memorandum of Points & Authorities in Support of Motion for Preliminary Approval

12   of Class Action Settlement ("Supp. Memo"), along with supporting documents.

13        In their unopposed Renewed Motion, plaintiffs seek an order:  (1) preliminarily approving

14   the proposed settlement with DT Credit, (see Renewed Motion at 1); (2) conditionally certifying

15   a settlement class, (see id. at 1, 4); (3) appointing named plaintiffs as class representatives, (see

16   id. at 9); (4) approving and directing notice of the proposed settlement to the class, (see id. at 1,

17   4); (5) setting a schedule for final approval of the proposed settlement, (see id. at 1, 23-24); and

18   appointing plaintiffs' counsel as class counsel.  (See id. at 4, 9).

19                                    **BACKGROUND**

20   I.    FACTUAL ALLEGATIONS.

21        This case arises from the repossession and sale of plaintiffs' vehicle by DT Credit.  (See

22   Complaint at ¶ 10).  DT Credit is engaged in the business of providing financial services, including

23   credit for the purchase and sale of automobiles under conditional sales contracts.  (See id. at ¶

24   4).  In February 2008, McCaleb and James purchased a used 2006 Chevrolet Impala from

25   nonparty Drivetime, an auto dealer in Torrance, California.  (See id. at ¶ 9).  The "conditional sale

26   contract"  identifies McCaleb and James as the buyer and co-buyer.  (See id. at ¶ 9 & Exh. A

27

28

("conditional sale contract")).[1]   The dealer assigned the conditional sale contract to DT Credit. (See id.).   According to the Complaint, the conditional sale contract is regulated by the Rees-Levering Act.  (See id. at ¶ 9).

Plaintiffs were unable to stay current on their installment payments, (see Renewed Motion at 5), and in April 8, 2013, DT Credit repossessed the vehicle.  (See Complaint at ¶ 10).  DT Credit then mailed a Notice of Intent to Dispose of Repossessed or Surrendered Motor Vehicle ("NOI") to plaintiffs, (see id.; Exh. B (NOI)), which advised plaintiffs that their vehicle had been repossessed and would be sold unless they reinstated the contract or redeemed the vehicle.  (See id.).  On or about April 19, 2013, McCaleb attempted to contact DT Credit to determine the amount plaintiffs owed in order to redeem their vehicle or reinstate the contract.  (See id. at ¶ 11).  The amounts given to McCaleb by a DT Credit representative were different than those set forth in the NOI.  (See id. at ¶¶ 11-12).  When plaintiffs were unable to recover the vehicle, DT Credit sold it, (see id. at ¶ 13), and assessed a deficiency balance against plaintiffs.  (See Renewed Motion at 5).

Plaintiffs allege that the form NOI issued by DT Credit failed to comply with the Rees-Levering Act in one or more respects.  (See Complaint at ¶¶ 21-22).  For example, plaintiffs allege that the form NOI violated provisions of the Rees-Levering Act related to a consumer's right to redemption, (see id. at ¶ 21(a)); a consumer's right to reinstatement of the contract, (see id. at ¶ 21(b)); the means by which a consumer can request an extension of the redemption and reinstatement periods, (see id. at ¶ 21(c)); and the name and address to whom payment shall be made.  (See id. at ¶ 21(d)).  Plaintiffs further allege that "[a]bsent strict compliance with the mandatory requirements for the Statutory Notice, no one may lawfully collect any deficiency from any person liable under a Form Agreement following disposition of the repossessed vehicle."  (Id. at ¶ 17) (emphasis in original).  Accordingly, plaintiffs allege that DT Credit "has assessed, demanded, attempted to collect, and collected deficiency balances from borrowers, including from

---

[1]   The contract attached to the Complaint as Exhibit A is titled "Simple Interest Retail Installment Contract," which plaintiffs refer to as a "conditional sale contract" throughout the Complaint and Renewed Motion.

1  Plaintiffs, for which the borrowers were not liable as a matter of law and which [defendant] has no
2  legal right to demand or collect."  (Id. at ¶ 25).  Plaintiffs further allege that DT Credit "made
3  unlawful collection demands to Plaintiffs and other California borrowers, have falsely represented
4  to such borrowers that deficiency balances were owed, have collected thousands of dollars from
5  such borrowers to which it was not entitled, and have threatened to sue, and have sued, borrowers
6  who did not owe any deficiency as a matter of law."  (Id. at ¶ 26).

7  II.    SETTLEMENT AGREEMENT.

8       On October 31, 2013, the parties participated in a mediation before the  Honorable George
9  P. Schiavelli (Ret.), (see Declaration of Bryan Kemnitzer in Support of Motion for Preliminary
10 Approval of Class Action Settlement ("Kemnitzer Decl.") at ¶¶ 31-32), during which the parties
11 "negotiated the recovery on behalf of the class."  (Id. at ¶ 32).  On March 3, 2014, the parties
12 participated in a second mediation with Judge Schiavelli to "negotiate[] attorneys' fees and costs."
13 (Id.).  Between the first and second mediation, "the parties engaged in extensive negotiations of
14 every aspect of the settlement[, and exchanged] fourteen drafts of the Settlement Agreement[.]"
15 (Id. at ¶ 33).

16      Plaintiffs ultimately agreed to settle their claims with DT Credit in exchange for DT Credit
17 (1) extinguishing the deficiency balances of all class members, (see Supplemental Declaration of
18 Bryan Kemnitzer in Support of Motion for Preliminary Approval of Class Action Settlement
19 ("Kemnitzer Supp. Decl."), Exh. E (Revised Amended Settlement Agreement and Release)
20 ("Settlement Agreement") at § 5.03(a)); (2) ceasing all collection efforts against all class members
21 (see id. at §§ 3.03, 5.03(b)); (3) requesting credit reporting agencies to permanently and
22 completely delete the DT Credit trade line on all class members' credit reports, (see id. at §
23 5.03(c)); and (4) paying 50% of the total amount of deficiency balances collected by DT Credit to
24 serve as restitution to approximately 126 class members who paid all or some of their deficiency
25 balances.  (See id. at § 5.02).  The Settlement Agreement also provides for injunctive relief
26 preventing DT Credit from "taking any further steps to collect Deficiency Balances assessed during
27 the Settlement Class Period purportedly owed by any members of the Settlement Class."  (Id. at
28 Exh. D ([Proposed] Injunctive Relief  Order); see id. at §§ 3.02(g)).

The proposed settlement class is defined by the parties as:

> [A]ll persons . . . (a) who purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to California's Rees-Levering Automobile Sales Finance Act, Civil Code § 2981, et seq.; (b) whose motor vehicle was repossessed or voluntarily surrendered; (c) who were issued an NOI by DT Credit Company, LLC and/or the Related Parties at any time from February 4, 2010 and January 31, 2014; and (d) against whose account a deficiency balance was assessed and who owe or owed a Deficiency Balance to DT Credit Company, LLC and/or the Related Parties.

(Renewed Motion at 2; Settlement Agreement at § 2.19(a)-(d)) (some capitalization omitted).  The Settlement Agreement excludes from the settlement class "any borrowers of DT Credit or the Related Parties who received an NOI and reinstated their Conditional Sales Contract with DT Credit Company, LLC at any time from February 4, 2010 and January 31, 2014[,]" and "any borrowers of DT Credit Company, LLC or the Related Parties who opt out of the Settlement Class."  (Renewed Motion at 2; Settlement Agreement at § 2.19(e)-(f)) (some capitalization omitted).

## **LEGAL STANDARD**

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

I.    CLASS CERTIFICATION

"Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]"  Sandoval v. Roadlink USA Pacific, Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)).  "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'"  Id. (quoting Amchem, 521 U.S. at 620, 117 S.Ct. at 2248).  "Such attention is of vital importance, for a court asked to

certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Federal Rule of Civil Procedure 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548 (2011).  Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy

already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Service Com., 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983). Accordingly, a district court must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959; see Fed. R. Civ. Proc. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, Hoffer v. City of Seattle, 506 U.S. 953 (1992) (internal quotation marks and citation omitted).

"If the [settlement] proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In order to approve a settlement in a class action, the court must conduct a three-step inquiry. First, it must assess whether defendant has met the notice requirements under the CAFA. See 28 U.S.C. § 1715(d). Second, it must determine whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing to determine whether the settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959; Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964 (E.D. Cal. 2012) (conducting three-step inquiry).

For purposes of preliminary approval of a proposed class action settlement, the court "must evaluate the terms of the settlement to determine whether they are within a range of possible

7

judicial approval." <u>Wright v. Linkus Enters., Inc.</u>, 259 F.R.D. 468, 472 (E.D. Cal. 2009). The court should preliminarily approve the settlement as long as a "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]" <u>In re Vitamins Antitrust Litig.</u>, 2001 WL 856292, *4 (D.D.C. 2001) (quoting Manual for Complex Litigation, Third, § 30.41 (West 1999)). At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) falls within the range of possible approval; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) has no obvious deficiencies. <u>See Harris v. Vector Mktg. Corp.</u>, 2011 WL 1627973, * 7 (N.D. Cal. 2011) (granting preliminary approval of settlement in wage and hour class action); <u>Alvarado v. Nederend</u>, 2011 WL 90228, *5 (E.D. Cal. 2011) (same). "Closer scrutiny is reserved for the final approval hearing." <u>Harris</u>, 2011 WL 1627973, at *7; <u>see In re Bluetooth Headset Products Liab. Litig.</u>, 654 F.3d 935, 946 (9th Cir. 2011) (setting forth eight factors to be examined by the court in determining final approval of settlement).

## **DISCUSSION**

I.     CONDITIONAL CLASS CERTIFICATION.

    A.     <u>Rule 23(a) Requirements</u>.

        **1.     Numerosity.**

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "[T]he plaintiff need not show that it would be 'impossible' to join every class member." <u>Sandoval</u>, 2011 WL 5443777, at *4. Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers." <u>See Jordan v. L.A. County</u>, 669 F.2d 1311, 1319 (9th Cir.), <u>vacated on other grounds</u>, 459 U.S. 810 (1982) (class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when

membership dips below 21." <u>Slaven</u>, 190 F.R.D. at 654; <u>see</u> <u>Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 473 (C.D. Cal. 2012).

Here, plaintiffs submit the declaration of DT Credit's secretary and general counsel who avers that the proposed settlement class consists of 9,784 consumers. (<u>See</u> Kemnitzer Decl., Exh. 5 (Declaration of Jon Ehlinger of DT Credit Company, LLC Pursuant to the Amended Settlement Agreement and Release ("Ehlinger Decl.")) at ¶ 3). The class size is well over 40 members, and thus meets the numerosity requirement.

**2.    Commonality.**

To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." <u>Ellis</u>, 657 F.3d at 981 (citing Fed. R. Civ. P. 23(a)(2)). "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." <u>Id.</u> Indeed, "for purposes of Rule 23(a)(2) even a single [common] question will do." <u>Dukes</u>, 131 S.Ct. at 2556.

"Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories." <u>Barbosa v. Cargill Meat Solutions Corp.</u>, 297 F.R.D. 431, 441 (E.D. Cal. 2013) (citing <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998)). "As clarified in [<u>Dukes</u>], a plaintiff must demonstrate that the class members 'have suffered the same injury' and that their claims 'depend upon a common contention . . . of such a nature that [it] is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" <u>Id.</u> (quoting <u>Dukes</u>, 131 S.Ct. at 2551).

Here, DT Credit does not deny that it used and sent standard form NOIs to class members during the class period. (<u>See</u> Amended Motion at 22; <u>see</u>, <u>generally</u>, Non-Opp.). Plaintiffs allege that "[a]bsent strict compliance with the mandatory requirements for the Statutory Notice, no one may lawfully collect any deficiency from any person liable under a Form Agreement following disposition of the repossessed vehicle." (Complaint at ¶ 17) (emphasis omitted). Therefore, according to plaintiffs, "common issues [include] whether or not DT Credit's statutory NOI . . . failed to provide the disclosures required by the Rees-Levering Act . . . and whether as a result,

9

DT Credit is barred from collecting deficiency balances from any of the named Class Representatives and each of the other settlement Class Members." (Renewed Motion at 22) (some capitalization omitted). The court finds that the commonality element is met in this case.

### 3. Typicality.

To demonstrate typicality, a plaintiff "must show that the named parties' claims are typical of the class." Ellis, 657 F.3d at 984 (citing Fed. R. Civ. P. 23(a)(3)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (internal quotation marks and citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Id. (internal quotation marks and citation omitted). "The typicality requirement demands that a named plaintiff's claims be 'reasonably co-extensive with those of absent class members,' although 'they need not be substantially identical.'" Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012) (quoting Hanlon, 150 F.3d at 1020).

Here, the claims of the named plaintiffs are typical of the claims of the class as they arise from the same factual basis and are based on the same legal theory, i.e., DT Credit's use of standard form NOIs that allegedly failed to comply with the requirements of the Rees-Levering Act, thereby rendering DT Credit's collection or attempted collection of deficiencies following disposition of repossessed vehicles unlawful. (See Complaint at ¶¶ 39-54; Renewed Motion at 20-21); see also Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (typicality satisfied where plaintiff's claims were based on "the same event or practice or course of conduct that [gave] rise to the claims of other class members and . . . are based on the same legal theory."). Also, the court is not aware of any facts that would subject the class representatives to "unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

### 4. Adequacy of Representation.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether named plaintiffs will

adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks and citation omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

The proposed class representatives, plaintiffs McCaleb and James, do not appear to have any conflicts of interest with the absent class members, especially given that they have no individual claims separate from the class claims.  (See, generally, Complaint).  Plaintiffs each declare that "[r]ather than bringing my own claims as an individual, I agreed to act as a class representative, putting the interests of the class ahead of my own interests. . . . I wanted to do this in order to help other people who were in a similar situation."  (Declaration of LaToya McCaleb in Support of Motion for Preliminary Approval of Class Action Settlement ("McCaleb Decl.") at ¶ 10; Declaration of Gloria James in Support of Motion for Preliminary Approval of Class Action Settlement ("James Decl.") at ¶ 9; see also Renewed Motion at 21 ("Plaintiffs' interests in prosecuting the case and obtaining the most beneficial recovery possible fully comport with the interests of the class.")).  Accordingly, "[t]he adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members[.]  Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class."  Barbosa, 297 F.R.D. at 442.

Additionally, the court is satisfied that plaintiffs' counsel are competent and willing to prosecute this action vigorously.  Plaintiffs' counsel request, and the Settlement Agreement provides, that their firm – Kemnitzer, Barron & Krieg, LLP – be appointed class counsel.  (See Renewed Motion at 9; Kemnitzer Decl. at ¶ 4; Settlement Agreement at §§ 2.03, 3.01).  Attorney Kemnitzer asserts that his "firm has extensive experience in class actions, particularly with regard to class actions relating to the Rees-Levering Automobile Sales Finance Act and the failure of financial institutions to comply with the Act after repossession of vehicles."  (Kemnitzer Decl. at

¶ 4).  According to Mr. Kemnitzer, his firm has "represented more than 260,000 consumers in similar Rees-Levering Automobile Sales Finance Act cases[; has] been able to obtain substantial relief for those consumers including having financial institutions agree not to collect over $2.2 billion worth of deficiencies[; and has secured] recovery of almost $35 million from NOI class actions[.]"  (Id. at ¶ 5; see id. at Exh. 2).  He further declares that his firm "specializes in consumer litigation[, and their] law practice is focused on representing consumers who have disputes with automobile manufacturers, auto dealers and auto finance lenders."  (Id. at ¶ 53).  Based on this evidence, the court finds that plaintiffs' counsel are competent, and that the adequacy-of-representation requirement is accordingly satisfied.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases."); Avilez, 286 F.R.D. at 457 ("Defendants do not dispute and the evidence confirms that, as detailed in their declarations, Plaintiff's counsel are experienced class action litigators who have litigated many . . . class actions and have been certified as class counsel in numerous other class actions[.]").

B.    Rule 23(b) Requirements.

"Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove[] the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Sandoval, 2011 WL 5443777, at *2; see Fed. R. Civ. P. 23(b)(3).

1.    Predominance.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623, 117 S.Ct. at 2249.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at 1022 (internal

quotation marks and citations omitted); see Kelley v. Microsoft Corp., 395 F'Appx. 431, 432 (9th Cir. 2010) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues.") (internal quotation marks and citation omitted) (alterations in original). Further, plaintiffs' "damages must be capable of determination on a classwide basis, and those damages must be traceable to a plaintiff's 'liability case.'" Munoz v. PHH Corp., 2013 WL 2146925, *24 (E.D. Cal. 2013) (citing Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013)).

Here, the Complaint sufficiently demonstrates that "[a] common nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022. As discussed above, see supra at § I.A.2., there are common questions regarding DT Credit's issuance of standardized NOIs to class members. (See Complaint at ¶¶ 39-54; Renewed Motion at 22). Specifically, the "overriding common question of fact or law [in this case] is whether or not the [NOI] used by DT Credit strictly complied with [the Rees-Levering Act]." (Supp. Memo at 5). According to plaintiffs, "[i]f any one of the mandated disclosures is missing [from the NOI], or does not strictly comply with the law, the lender is absolutely barred from collecting from the borrower any deficiency remaining after disposition of the vehicle." (Renewed Motion at 17) (citing Cal. Civ. Code §§ 2983.2 & 2983.8); Bank of America v. Lallana, 19 Cal.4th 203, 215 (1998)). Plaintiffs contend that DT Credit's "standard form NOI was defective, and failed to provide borrowers with their statutorily mandated notice of their rights and obligations after repossession of vehicle[.]" (Renewed Motion at 17). Common proof can therefore establish that DT Credit issued or did not issue standard form NOIs and whether those standard NOIs violated the Rees-Levering Act by not including all necessary disclosures.

Finally, class members' individual damages are "capable of determination on a class-wide basis, and those damages [are] traceable to . . . plaintiff[s'] 'liability case.'" Munoz, 2013 WL 2146925, at *24 (quoting Comcast, 133 S.Ct. at 1433). Indeed, it appears that individual monetary and non-monetary relief has already been established by DT Credit or can readily be established by resort to its databases. (See Ehlinger Decl. at ¶¶ 2-4); see also Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("[defendant's] own documents demonstrate the feasibility of calculating damages in this case. [Its] electronic payroll records contain much of the data needed

1  to calculate damages.").  In short, the court is persuaded that the predominance requirement is

2  satisfied.

3                  **2.**      **Superiority.**

4         "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

5  objectives of the particular class action procedure will be achieved in the particular case" and

6  "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

7  Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

8  superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

9         The first factor considers "the class members' interests in individually controlling the

10  prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

11  against class certification where each class member has suffered sizeable damages or has an

12  emotion stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiffs do not assert claims

13  for emotional distress damages, nor is there any indication that the amount of damages any

14  individual class member could recover is significant.  (See, generally, Complaint).  Rather, "[t]he

15  average outstanding deficiency assessed against class members by DT Credit is approximately

16  $9,156.24[, and f]or class members who paid an amount towards their deficiencies, the average

17  amount paid is $731.96." (Kemnitzer Decl. at ¶ 19).  The court agrees with plaintiffs' assertion that

18  "the alternative methods of resolution are individual claims for a relatively small amount of

19  damages [and such] claims 'would prove uneconomic for a potential plaintiff,' because 'litigation

20  costs would dwarf potential recovery.'"[2]  (Renewed Motion at 18) (quoting Hanlon, 150 F.3d at

21  1023); see also Leyva, 716 F.3d at 515 ("In light of the small size of the putative class members'

22  potential individual monetary recovery, class certification may be the only feasible means for them

23  to adjudicate their claims.  Thus, class certification is also the superior method of adjudication.");

24  Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011), reconsideration

25  denied, 280 F.R.D. 540 (2012) ("Given the small size of each class member's claim, class

26

27  ────────────

28     [2] Plaintiffs additionally note that the anti-deficiency rule that underlies this matter "is a statutory claim of which most affected California borrowers are not aware."  (Renewed Motion at 18-19).

treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action."). Moreover, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz, 2013 WL 2146925, at *26.

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). The parties state that they are "unaware of [other] actions by or against class members[.]" (Supp. Memo at 4; Kemnitzer Supp. Decl. at ¶ 7; Declaration of Jon Ehlinger of DT Credit Company, LLC in Support of Preliminary Approval of Class Action Settlement at ¶ 3).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(C)-(D). "In the context of settlement, however, the third and fourth factors are rendered moot and are irrelevant." Barbosa, 2013 WL 3340939, at *11; Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citation omitted).

The only factor in play here weighs in favor of class treatment. Further, the filing of separate suits by several thousand class members "would create an unnecessary burden on judicial resources." Barbosa, 297 F.R.D. at 445. Under the circumstances, the court finds that the superiority requirement is satisfied.

II.   FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT.

The court's preliminary evaluation of the Settlement Agreement "does not disclose grounds to doubt its fairness[,] . . . such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]" In re Vitamins, 2001 WL 856292, at *4 (quoting Manual for Complex Litigation, Third, § 30.41 (West 1999)).

A.   The Settlement Is A Product Of Arms-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez

v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

Id. (internal quotation marks omitted).  The Ninth Circuit does not follow the approach of other circuits that requires district courts to "specifically weigh[] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." Id.  Rather, the Ninth Circuit examines whether the settlement is "the product of an arms-length, non-collusive, negotiated resolution[.]" Id.

Plaintiffs' Renewed Motion and supporting evidence, and the overall record in this case, evidence that the parties' settlement was reached through arms'-length negotiations.  There is no evidence of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties.  The Settlement Agreement was reached as a result of arms-length negotiations between counsel.  (See Renewed Motion at 22).  Based upon earlier litigation in state court involving the same counsel, defendant, and similar issues with respect to defendant's NOI, the parties engaged in early settlement discussions.  (See Kemnitzer Decl. at ¶¶ 23-30).  In August 2013, plaintiffs' counsel provided an "extensive settlement proposal" to defense counsel, (see id. at ¶ 30), but ultimately decided to engage an experienced mediator.  (See id. at ¶ 31).  The Settlement Agreement was the product of two mediation sessions before Judge Schiavelli of JAMS on October 31, 2013 and March 3, 2014, as well as extensive negotiation among counsel.  (See id. at ¶¶ 31-33).  During the first mediation session, the parties negotiated the recovery for the class, (see id. at ¶ 32), and then "negotiated attorneys' fees and costs" during the second mediation.[3]

_____

[3] The negotiations resulted in "fourteen drafts of the Settlement Agreement . . . and corresponding documents." (Kemnitzer Decl. at ¶ 33).

(See id.).  A settlement reached through the assistance of a mediator and through a several-months long process to finalize the settlement supports a determination that the settlement process was not collusive.  See Carter v. Anderson Merchandisers, LP, 2010 WL 1946784, *7 (C.D. Cal. 2010) ("The Court is . . . satisfied the Settlement Agreement is the product of arms-length negotiation" because the settlement was reached through "formal mediation sessions presided over by an experienced mediator[.]").

The record further supports the conclusion that the settlement was reached through arms-length negotiation.  While the parties did not engage in formal discovery, given prior litigation relating to whether a prior version of defendant's NOI complied with the Rees-Levering Act, plaintiffs were able to rely upon the extensive discovery conducted in that case, including the deposition of Ehlinger, DT Credit's secretary and general counsel.  (See Kenmintzer Decl. at ¶¶ 25-26, 28-30).  Plaintiffs also obtained "statistical information" from DT Credit via a declaration from Ehlinger.  (See id. at ¶¶ 29-30).  The parties therefore entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions and which are necessary for a robust negotiation.  See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) ("formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Clesceri v. Beach City Investigations & Protective Services, Inc., 2011 WL 320998, *9 (C.D. Cal. 2011) (same).

Based on the evidence and record before the court, the court is persuaded that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (quoting Hanlon, 150 F.3d at 1027).

B.    The Amount Offered In Settlement Falls Within A Range Of Possible Judicial Approval And Is A Fair And Reasonable Outcome For Class Members.

The settlement is fair, reasonable, and adequate, and falls within a range of possible approval.  Each class member will receive concrete and immediate relief.  According to DT Credit's records, there are 9,784 class members whose deficiency balances total approximately $71,052,482.  (See Ehlinger Decl. at ¶ 3).  As a result of the Settlement Agreement, such

deficiency balances will be extinguished.  (See id.; Settlement Agreement at § 5.03(a)).  Moreover, DT Credit has ceased all collection activities against the class members, (see Ehlinger Decl. at ¶ 6; Settlement Agreement at §§ 3.03, 5.03(b)), and will submit to Equifax, Experian, and TransUnion a request to permanently and completely delete the DT Credit trade line on all settlement class members' credit reports to reflect that their DT Credit accounts have a zero balance and have been settled.  (See Ehlinger Decl. at ¶ 7; Settlement Agreement at § 5.03(c)).

Additionally, the Settlement Agreement requires DT Credit to refund 50% of the total amount collected from settlement class members as deficiency balances.  (See Settlement Agreement at § 5.02(b); Ehlinger Decl. at ¶¶ 3-4).  DT Credit has collected approximately $92,227 of deficiency balances from 126 accounts.  (See Ehlinger Decl. at ¶ 3).  Accordingly, it will pay approximately $46,114 to those settlement class members.  (See id. at ¶¶ 3-4).  Any check that is not cashed by class members within 120 days will go into a cy pres fund rather than revert to defendant.  (See Settlement Agreement at §§ 3.07, 5.02(c), 5.07).  Finally, the Settlement Agreement provides for injunctive relief preventing further collection activity on settlement class members.  (See Settlement Agreement at § 3.02(g) & [Proposed] Injunctive Relief  Order).

As plaintiffs note, the settlement "results in the class receiving almost all of the relief to which the class would have been entitled to had the case proceeded to trial."  (Kemnitzer Decl. at ¶ 44; see also id. at ¶ 9 (chart comparing best possible outcome at trial to current settlement terms)).  The only discount given as a result of the settlement relates to refunds of the deficiency balances collected from some class members.  Rather than refunding 100% of those funds, defendant will refund 50%, for a total of $46,111.  (See id. at ¶¶ 9, 44, 46; Settlement Agreement at § 5.02).  The class is "not giving up any penalties or other relief to which the class would be entitled at trial."  (Kemnitzer Decl. at ¶ 45).

The relief obtained by plaintiffs is significant given that early in the litigation, DT Credit indicated its intent to seek to compel arbitration on an individual basis.  (See Kemnitzer Decl. at ¶ 47).  "Based on this very real threat to the class, [plaintiffs' counsel] determined that it would be best to reduce the amount of restitution to 50%[,]" (id. at ¶ 48), particularly given the Supreme

1   Court's decision in AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011).[4]  (See id.).  Given

2   the risks and uncertainty to plaintiffs in moving for class certification due to defendant's intent to

3   seek arbitration, the total settlement amount and benefits is an exceptional recovery for the class.

4   The payment represents 50% of the potential total recovery.  See In re Mego Fin. Corp. Sec. Litig.,

5   213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the [s]ettlement amount of almost $2 million was

6   roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was]

7   fair and adequate."); Rodriguez v. W. Publ'g. Corp., 563 F.3d 948, 964 (9th Cir. 2009) (affirming

8   settlement approval where the settlement represented 30% of the damages estimated by the class

9   expert); Linney, 151 F.3d at 1242 ("The fact that a proposed settlement may only amount to a

10  fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

11  grossly inadequate and should be disapproved.") (internal quotation marks and citation omitted).

12         For the reasons set forth above, the court is persuaded that the Settlement Agreement's

13  terms and total payment amount are fundamentally fair, reasonable and adequate, and that the

14  settlement falls within the range of possible approval.

15         C.   The Settlement Agreement Does Not Improperly Grant Preferential Treatment To

16              The Class Representatives.

17              1.   The Incentive Awards Do Not Provide Unduly Preferential Treatment To

18                   The Class Representatives.

19         The Settlement Agreement provides for payment of a service award of $2,500 for each

20  class representative "for their service to the Class[.]"  (Settlement Agreement at § 5.06).

21         "Although [the Ninth Circuit] ha[s] approved incentive awards for class representatives in

22  some cases, [it has instructed] district courts to scrutinize carefully the awards so that they do not

23  undermine the adequacy of the class representatives."  Radcliffe v. Experian Info. Solutions Inc.,

24  715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement

25  approval).  In Radcliffe, the court cast doubt, but did not rule on, "whether class representatives

26  _____

27       [4]  The Supreme Court in Concepcion overturned a rule established by California case law that
    rendered unconscionable arbitration agreements that included classwide arbitration waivers.  See
28  Concepcion, 131 S.Ct. at 1750-1753.

1   could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement

2   value when they would receive $5,000 incentive awards." Id. at 1165.

3          In Staton, the court reversed the district court's approval of a class-action settlement where

4   the incentive payments of up to $50,000 were disproportionately large as compared to class

5   members' payments averaging $16,500 for one subclass, and $1,000 for another.  See 327 F.3d

6   at 948-49, 977.  The court cautioned that class representatives receiving special incentive awards

7   "may be more concerned with maximizing those incentives than with judging the adequacy of the

8   settlement as it applies to class members at large."  Id. at 977.  In such cases, "the class

9   representatives [may not] adequately represent the class."  Radcliffe, 715 F.3d at 1164.

10         The Staton court, however, approvingly cited to Cook v. Niedert, 142 F.3d 1004, 1016 (7th

11  Cir. 1998), in which the Seventh Circuit allowed an incentive payment of $25,000 "in the context

12  of a recovery of more than $14 million[,]" where the plaintiff "spent hundreds of hours with his

13  attorneys and provided them with 'an abundance of information[.]'" 327 F.3d at 976 (quoting Cook,

14  142 F.3d at 1016).  Staton also cited favorably to In re SmithKline Beckman Corp. Sec. Litig., 751

15  F.Supp.525, 535 (E.D. Pa. 1990), which approved "$5,000 awards for one named representative

16  of each of nine plaintiff classes involving more than 22,000 claimants in a settlement of $22

17  million[.]"  327 F.3d at 977.

18         With this guidance in mind, the court must examine whether there is a "significant disparity

19  between the incentive awards and the payments to the rest of the class members" such that it

20  creates a conflict of interest.  See Radcliffe, 715 F.3d at 1165.  Further, "[i]n deciding whether [an

21  incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect

22  the interests of the class, the degree to which the class has benefitted from those actions, and the

23  amount of time and effort the plaintiff expended in pursuing the litigation."  Cook, 142 F.3d at 1016.

24         The court first considers whether the incentive awards of $2,500 are unduly

25  disproportionate to the benefits likely to be received by the other class members.  Here, the actual

26  restitution payments will vary widely amongst class members, depending on the amount each paid

27  toward their deficiencies.  The average payment will be $366 (50% of $732).  (See Kemnitzer

28  Decl. at ¶ 19).  While a disparity exists between the service payments and the average monetary

payment, the court does not believe, under the circumstances here, that such disparity rises to the level of unduly preferential treatment.  First, courts have approved similar or greater disparities between service awards and individual class member payments.  See, e.g., Cox v. Clarus Marketing Group, LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (court approved a $5,000 incentive award where class members would receive a maximum payment of $36); Lo v. Oxnard European Motors, LLC, 2011 WL 6300050, *5 & *7 (S.D. Cal. 2011) (incentive award of $1,500 was appropriate where individual awards approximated $131.00 and "appear[ed] to be on par with class representative awards in similar class action settlements."); In re Mego Fin., 213 F.3d at 457 & 463 (affirming incentive award of $5,000 where total settlement fund, including costs and attorney's fees, was $1,725,000 for 5,400 potential class members); see also Fulford v. Logitech, Inc., 2010 WL 807448, *3 n. 1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).

Second, plaintiffs submit evidence supporting the adequacy of the incentive payments based on the amount of time spent and burden carried by the class representatives, and the benefits they provided to counsel and the class as a whole throughout the litigation.  See Cook, 142 F.3d at 1016.  The proposed class representatives spent between 10-20 hours performing duties as class representatives and assisting counsel in the prosecution of this case.  (See McCaleb Decl. at ¶ 11; James Decl. at ¶ 10).  These duties included researching counsel, meeting and conferring with counsel, organizing and producing documents, being available by telephone during one of the mediation sessions, reviewing drafts of the settlement agreement, reviewing and revising their declarations, and monitoring the progress of the settlement and settlement approval process. (See McCaleb Decl. at ¶ 11; James Decl. at ¶ 10).  Counsel for plaintiffs avers that the proposed class representatives "participated extensively in the case and although they did not attend the mediation because of the lack of transportation, they were available by phone and [he] called them during the mediation to discuss the proposed settlement terms." (Kemnitzer Decl. at ¶ 38).  In sum, plaintiffs' evidence establishes that the incentive awards are warranted based on their efforts to "protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."

1    Cook, 142 F.3d at 1016.

2        **2.    The Incentive Payments Are Not Conditioned On The Class**

3              **Representatives' Support Of The Settlement**.

4        In Radcliffe, the court reversed approval of a class action settlement because the

5    "conditional incentive awards caused the interests of the class representatives to diverge from the

6    interests of the class because the settlement agreement told class representatives that they would

7    not receive incentive awards unless they supported the settlement." 715 F.3d at 1161.  Here, the

8    class representatives each state that "I did not sign the settlement agreement as a condition of

9    receiving a service award of $2,500.00.  I signed the settlement agreement because I think it

10   provides significant relief to almost 10,000 consumers."  (McCaleb Decl. at ¶ 13; James Decl. at

11   ¶ 12).  They both also state that they are "aware of the general terms of the settlement, and . . .

12   believe the terms to be fair and reasonable."  (McCaleb Decl. at ¶ 14; James Decl. at ¶ 13).

13       D.    The Settlement Agreement Has No Obvious Deficiencies.

14       District courts have the duty and authority to protect the interests and rights of class

15   members as well as to ensure the "integrity of the settlement approval process." Hanlon, 150 F.3d

16   at 1025.  When the parties appeared before the court on April 17, 2014, and June 5, 2014, the

17   court expressed concern over certain language in the original Settlement Agreement.  The parties

18   have sufficiently cured the deficiencies identified by the court.  (See, generally, Settlement

19   Agreement.).

20       E.    Proposed Class Notice And Notification Procedures.

21       Upon a settlement of a certified class, "[t]he court must direct notice in a reasonable

22   manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

23   Federal Rule of Civil Procedure 23(c)(2) prescribes the "best notice that is practicable under the

24   circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B)

25   (enumerating notice requirements for classes certified under Rule 23(b)(3)).

26       A class action settlement notice "is satisfactory if it generally describes the terms of the

27   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

28   forward and be heard." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert.

denied, 543 U.S. 818 (2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir.), cert. denied, 544 U.S. 1044 (2005).  Settlement notices must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983) (internal quotation marks and brackets omitted); see Trotsky v. L.A. Fed. Sav. & Loan Ass'n., 48 Cal.App.3d 134, 151-52 (1975) (same);  Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members.").  The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms.  See Wershba, 91 Cal.App.4th at 251-52.  "[N]otice is adequate if it may be understood by the average class member."  4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013).

Here, the Class Notice describes the nature of the action, including the class claims.  (See Settlement Agreement, Exh. B (Notice of Proposed Class Action Settlement ) ("Class Notice") at 1); see Fed. R. Civ. P. 23(c)(2)(B)(I) & (iii).  The class definition is conspicuously included in a section entitled, "Who Is A Settlement Class Member?"  (See Class Notice at 1-2); see Fed. R. Civ. P. 23(c)(2)(B)(ii).  The Class Notice explains the terms of the Settlement Agreement, including the benefits class members will receive and the manner in which restitution was determined for class members entitled to such relief.  (See Class Notice at 2-3).  It informs class members that they need not do anything in order to receive such benefits.  (See id. at 2).  The Class Notice also includes an overview and detailed explanation laying out the class members' options under the settlement:  they may exclude themselves, object, or do nothing.  (See id. at 3-4); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  The Settlement Agreement and Class Notice provide that class members may elect to exclude themselves from the settlement by completing and mailing a simple exclusion form to the Claims Administrator, Heffler Claims Group ("Heffler"), that will be mailed

with the Class Notice to each class member.  (See Settlement Agreement at § 3.10 & Exh. B1 (Request for Exclusion from Class Action Settlement); Class Notice at 3).  The Class Notice also states that if class members choose to object to the settlement, they may object by submitting their written objections to the court, and that they may attend the Final Approval Hearing.  (See Class Notice at 4); see Fed. R. Civ. P. 23(c)(2)(B)(iv).  The Class Notice also explains that all members of the Settlement Class will release all claims that relate to the claims or issues asserted in the lawsuit.  (See Class Notice at 3); see Fed. R. Civ. P. 23(c)(2)(B)(vii).  Information regarding the Final Approval Hearing is also included.  (See Class Notice at 4).  Since the benefits and restitution payments will be automatic upon final approval of the settlement, there will be no claims process.  (See, generally, Settlement Agreement).

The Settlement Agreement proposes mailing the Class Notice by first class mail, within 20 days of the entry of an order granting preliminary approval of the Settlement Agreement, (see Settlement Agreement at § 3.09), and is reasonably designed to reach all individuals who would be bound by the settlement.  (See id. at §§ 3.05, 3.08).  The Settlement Agreement further provides that Heffler will "establish[] a toll-free phone number for inquiries pursuant to the Class Notices[.]"  (Id. at § 3.06(a)).

Based on the foregoing, the court finds that there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members. Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to the class members.

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' [Renewed] Motion for Preliminary Approval of Class Action Settlement **(Document No. 29)** is **granted** upon the terms and conditions set forth in this Order.

2. The court preliminarily certifies the class, as defined in § 2.19 of the Revised Amended Settlement Agreement and Release ("Settlement Agreement") (Document No. 35-9) for the

purposes of settlement.

3.  The court preliminarily appoints plaintiffs LaToya McCaleb and Gloria James as class representatives for settlement purposes.

4.  The court preliminarily appoints the law firm of Kemnitzer, Barron & Krieg, LLP as class counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the proposed Settlement Agreement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The proposed manner of the notice of settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of Due Process.

7.  The Court approves the form, substance and requirements of the Notice of Proposed Class Action Settlement ("Class Notice") and Request for Exclusion from Class Action Settlement, annexed as Exhibits B and B1, respectively, to the Settlement Agreement.

8.  The parties shall carry out the settlement according to the terms of the Settlement Agreement.

9.  Heffler Claims Group ("Heffler") is hereby appointed as the Claims Administrator. Promptly following entry of this order, Heffler will prepare final versions of the Class Notice and Request for Exclusion from Class Action Settlement, incorporating into them the relevant dates and deadlines set forth in this Order and the Settlement Agreement, and will commence the notice process, in accordance with the Settlement Agreement.

10.  The deadlines for class members to file requests for exclusion and objections to the settlement shall be in conformity with the Settlement Agreement.  Any class member may submit objections to and, upon request, may be excluded from the settlement by submitting a Request for Exclusion from Class Action Settlement form, no later than forty-five (45) days after the Class Notice is first disseminated, and as further instructed in the Class Notice and Opt-out Form.

11.  A final approval (fairness) hearing is hereby scheduled for **April 9**, **2015,** at **10:00 a.m.** in Courtroom 22, to consider the fairness, reasonableness and adequacy of the Settlement

Agreement as well as the award of attorney's fees and costs to class counsel, and service awards to the class representatives.

12.   Plaintiffs shall file and serve a motion for final approval of the Settlement Agreement no later than **March 12, 2015**, and notice it for hearing for the date set forth above.

13.   If any opposition or objection to the Settlement Agreement has been filed, then the parties shall, no later than five (5) court days before the final approval hearing, file, jointly or separately, a reply in support of the motion for final approval of the Settlement Agreement.

14.  Plaintiffs shall file a motion for an award of class representatives service payments and attorney's fees and costs pursuant to, and in accordance with, the terms of the Settlement Agreement and no later than **March 12, 2015**, and notice it for hearing for the date set forth above.

15.   If any opposition or objection to the motion for an award of class representatives service payments and attorney's fees and costs has been filed, then the parties shall, no later than five (5) court days before the final approval hearing, file a reply in support of the motions for an award of class representative incentive payments and attorney's fees and costs.

Dated this 29th day of December, 2014.


/s/
Fernando M. Olguin
United States District Judge

26