**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LaTOYA McCALEB, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DT CREDIT COMPANY, LLC, <br><br> Defendant. | Case No. CV 13-6444 FMO (JCx) <br><br> **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF ATTORNEY'S FEES, COSTS, & SERVICE AWARDS** |

Having reviewed and considered plaintiffs' unopposed Motion for Final Approval of Class Action Settlement ("Settlement Motion") and Motion for Attorneys' Fees, Costs and Expenses and Service Awards ("Fees Motion"), and the oral argument presented during the final fairness hearing held on April 9, 2015, the court concludes as follows.

## INTRODUCTION

Plaintiffs filed this class action in state court against DT Credit Company, LLC ("DT Credit") on July 22, 2013. (See DT Credit's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 and the Class Action Fairness Act ("NOR"), Exhibit ("Exh.") A ("Complaint")). Plaintiffs' Complaint asserts claims against DT Credit for violations of: (1) the Rees-Levering Automobile Sales Finance Act, Cal. Civ. Code §§ 2981, et seq. ("Rees-Levering Act"); and (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (See Complaint at ¶¶ 39-54). DT Credit removed the action to this court on September 3, 2013, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (See NOR at 3).

On December 29, 2014, the court granted preliminary approval of the settlement, appointed

Heffler Claims Group ("Heffler") as the claims administrator, and directed Heffler to provide notice to the class members. (See Court's Order of December 29, 2014, at 24-25). The court set April 9, 2015, as the date for the Final Approval Hearing. (See id. at 25).

## BACKGROUND

I.  PLAINTIFFS' CLAIMS.

This case arises from the repossession and sale of plaintiffs' vehicle by DT Credit. (See Complaint at ¶¶ 10 & 13). DT Credit is engaged in the business of providing financial services, including credit for the purchase and sale of automobiles under conditional sale contracts. (See id. at ¶ 4). In February 2008, plaintiffs LaToya McCaleb ("McCaleb") and Gloria James ("James") (collectively, "plaintiffs") purchased a used 2006 Chevrolet Impala from nonparty Drivetime, an auto dealer in Torrance, California. (See id. at ¶ 9). The "conditional sale contract" identifies McCaleb and James as the buyer and co-buyer. (See id. at ¶ 9 & Exh. A ("conditional sale contract")).[1] The dealer assigned the conditional sale contract to DT Credit. (See Complaint at ¶ 9). According to the Complaint, the conditional sale contract is regulated by the Rees-Levering Act. (See id.).

Plaintiffs were unable to stay current on their installment payments, (see Renewed Motion at 5), and on or around April 8, 2013, DT Credit repossessed the vehicle. (See Complaint at ¶ 10). DT Credit then mailed a Notice of Intent to Dispose of Repossessed or Surrendered Motor Vehicle ("NOI") to plaintiffs, (see id.; Exh. B (NOI)), which advised plaintiffs that their vehicle had been repossessed and would be sold unless they reinstated the contract or redeemed the vehicle. (See Complaint at ¶ 10). On or about April 19, 2013, McCaleb attempted to contact DT Credit to determine the amount plaintiffs owed in order to redeem their vehicle or reinstate the contract. (See id. at ¶ 11). The amounts given to McCaleb by a DT Credit representative were different than those set forth in the NOI. (See id. at ¶¶ 11-12). When plaintiffs were unable to recover the vehicle, DT Credit sold it, (see id. at ¶ 13), and assessed a deficiency balance against plaintiffs.

---

[1] The contract attached to the Complaint is titled "Simple Interest Retail Installment Contract," which plaintiffs refer to as a "conditional sale contract" throughout the Complaint and [Renewed] Motion for Preliminary Approval of Class Action Settlement ("Renewed Motion").

(See Court's Order of December 29, 2014, at 3; Renewed Motion at 5).

Plaintiffs allege that the form NOI issued by DT Credit failed to comply with the Rees-Levering Act in one or more respects. (See Complaint at ¶¶ 21-22). For example, plaintiffs allege that the NOI violated provisions of the Rees-Levering Act related to a consumer's right to redemption, (see id. at ¶ 21(a)); a consumer's right to reinstatement of a contract, (see id. at ¶ 21(b)); the means by which a consumer can request an extension of the redemption and reinstatement periods, (see id. at ¶ 21(c)); and the name and address to whom payment should be made. (See id. at ¶ 21(d)). Plaintiffs further allege that "[a]bsent strict compliance with the mandatory requirements for the Statutory Notice, no one may lawfully collect any deficiency from any person liable under a Form Agreement following disposition of the repossessed vehicle." (Id. at ¶ 17) (emphasis in original). According to plaintiffs, DT Credit "has assessed, demanded, attempted to collect, and collected deficiency balances from borrowers, including from Plaintiffs, for which the borrowers were not liable as a matter of law and which [defendant] has no legal right to demand or collect." (Id. at ¶ 25). Finally, plaintiffs allege that DT Credit "made unlawful collection demands to Plaintiffs and other California borrowers, have falsely represented to such borrowers that deficiency balances were owed, have collected thousands of dollars from such borrowers to which it was not entitled, and have threatened to sue, and have sued, borrowers who did not owe any deficiency as a matter of law." (Id. at ¶ 26).

II.     THE SETTLEMENT AGREEMENT.

Plaintiffs agreed to settle their claims with DT Credit in exchange for DT Credit: (1) extinguishing the deficiency balances of all class members, (see Supplemental Declaration of Bryan Kemnitzer in Support of Motion for Preliminary Approval of Class Action Settlement ("Kemnitzer Supp. Decl."), Exh. E (Revised Amended Settlement Agreement and Release) ("Settlement Agreement") (Dkt. No. 35-9)[2] at § 5.03(a)); (2) ceasing all collection efforts against

---

[2] Although the Settlement Motion cites to Exhibit 1 of the Declaration of Nancy Barron in Support of Motion for Final Approval of Class Action Settlement ("Barron Decl."), (see Settlement Motion at 1), the version of the settlement agreement attached to the Barron Declaration is one the court previously declined to approve and was subsequently revised by the parties. (See Barron Decl. at Exh. 1 (Settlement Agreement and Release); Court's Order of December 29, 2014,

all class members (see id. at §§ 3.03, 5.03(b)); (3) requesting credit reporting agencies to permanently and completely delete the DT Credit trade line on all class members' credit reports, (see id. at § 5.03(c)); and (4) paying 50% of the total amount of deficiency balances collected by DT Credit to serve as restitution to approximately 126 class members who paid all or some of their deficiency balances. (See id. at § 5.02(a) & (b)). The Settlement Agreement also provides for injunctive relief preventing DT Credit from "taking any further steps to collect Deficiency Balances assessed during the Settlement Class Period purportedly owed by any members of the Settlement Class." (Id. at Exh. D ([Proposed] Injunctive Relief Order); see id. at §§ 3.02(g)). Any funds remaining from checks left uncashed by class members will be distributed, subject to the court's approval, to Public Counsel of Los Angeles, as a cy pres recipient. (Id. at § 5.07).

The court preliminarily approved the class defined in the Settlement Agreement. (See Court's Order of December 29, 2014, at 24-25).

III.  NOTICE TO CLASS.

Heffler, the court-approved claims administrator, was engaged to, among other things: prepare and mail the Notice of Proposed Class Action Settlement ("Class Notice"); receive and process the class data list; receive and process undeliverable Class Notices; track and process requests for exclusion and objections; establish a toll-free number and respond to inquiries from class members; calculate settlement payments; and distribute funds to class members. (See Barron Decl., Exh. 2 (Declaration of Sandra Pappas, for Heffler Claims Group, Appointed Class Administrator ("Pappas Decl.")) at ¶ 3). Defendant provided Heffler with class data, including account numbers, names, and last-known addresses of 9,784 settlement class members, including co-buyers, the charge-off amount, and the settlement amount paid, where applicable. (Id. at ¶ 6). Twelve individuals were removed from the list because they had incomplete or missing addresses, which required additional research by defendant. (Id. at ¶ 7). After checking

---

at 24-25 (approving settlement agreement attached to the Kemnitzer Suppl. Decl at Dkt. No. 35-9); Kemnitzer Suppl. Decl. at ¶ 11 & Exh. E). Counsel for plaintiffs confirmed at the April 9, 2015, hearing that the incorrect version fo the settlement agreement was inadvertently attached to the Barron Declaration.

4

the class data list against the USPS National Change of Address database, and updating the mailing addresses accordingly, (see id. at ¶ 8), Heffler sent a file containing 9,772 names and addresses to a third party to print and mail the Class Notice. (Id. at ¶ 9).

On January 16, 2015, Class Notices were mailed, via first-class mail, to 9,772 settlement class members. (Pappas Decl. at ¶ 10). On or about the same day, Heffler additionally mailed Class Notices to five of the 12 settlement class members who were initially removed because of incomplete or missing addresses. (Id. at ¶ 11). Of the 9,777 Class Notices mailed, 1,814 were returned by the post office as undeliverable as of March 10, 2015. (Id. at ¶ 12). Of the 1,814 notices returned, forty were forwarded to new addresses provided by the post office. (Id.).

As of March 10, 2015, Heffler has received 13 timely requests for exclusion and one untimely request. (Pappas Decl. at ¶ 13). However, one class member also indicated he or she wanted to participate in the settlement. (Id.). Accordingly, only 12 timely and valid requests for exclusion have been received. (Id.). As of March 10, 2015, Heffler has not received any objections to the settlement. (Id. at ¶ 14).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23[3] provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Service Com'n of City and County of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, 506 U.S. 953 (1992) (internal quotation marks and citation omitted), who must examine the settlement for "overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts "have the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure.

Id. (internal quotation marks and citations omitted).

In order to approve a settlement agreement in a class action, the court must conduct a three-step inquiry. First, it must assess whether defendants have met the notice requirements under the CAFA. See 28 U.S.C. § 1715(d). Second, it must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

In determining whether a settlement agreement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

However, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is because "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id. District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Id. at 947 (internal quotation marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from the class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than added to the class fund[.]" Id. at 947 (internal quotation marks and citations omitted).

**DISCUSSION**

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. <u>Class Action Fairness Act</u>.

When a settlement is reached in a class action case, CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice, which shall include, among other things, "any proposed or final notification to class members[,]" and "any proposed or final class action settlement[.]" 28 U.S.C. § 1715(b)(3) & (4). The court is precluded from granting final approval of a class action settlement until the CAFA notice requirement is met. "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]." 28 U.S.C. § 1715(d).

Here, the court is persuaded that defendant has substantially complied with CAFA's notice requirements. See <u>Steinfeld v. Discovery Financial Services</u>, 2014 WL 1309352, *5-6 (N.D. Cal. 2014) (granting final approval of class action settlement despite defendant's failure to provide timely notice of amendment to settlement agreement); (see Declaration of Timothy D. Reynolds Regarding DT Credit Company LLC's Compliance with Class Action Fairness Act of 2005 Notice Requirements at ¶¶ 4-5; Supplemental Declaration of Timothy D. Reynolds Regarding DT Credit Company LLC's Compliance with Class Action Fairness Act of 2005 Notice Requirements at ¶¶ 10-11).

    B. <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Court's Order of December 29, 2014, at 12-15 & 24-25). Because circumstances have not changed, and for the reasons set forth in its Order of December 29, 2014, the court reconfirms its order certifying the class for settlement purposes under Rule 23(e). See <u>In re Apollo</u>

Group Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

### C. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Court's Order of December 29, 2014, at 22-25). As discussed above, Heffler sent, via U.S. mail, the Class Notice and Request for Exclusion from Class Action Settlement to class members. (See Pappas Decl. at ¶ 10; Class Notice at 4). Accordingly, based on its prior findings and the record before it, the court finds that the Class Notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, their rights to exclude themselves from the action, and their rights to object to the proposed settlement. (See Court's Order of December 29, 2014, at 22-25).

### D. Whether Class Settlement is Fair, Adequate and Reasonable.

#### 1. **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation.**

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement agreement]." Adoma, 913 F.Supp.2d at 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

While plaintiffs believe that their "case was strong on the merits," defendant "threaten[ed]

to compel arbitration and eviscerate the class." (Settlement Motion at 10-11; see Declaration of Bryan Kemnitzer in Support of Motion for Final Approval of Class Action Settlement ("Kemnitzer Decl.") at ¶ 6). Moreover, the delay of protracted litigation was of particular concern because it could delay credit repair and increase the likelihood of default judgments against borrowers unaware of their rights and defenses. (See Settlement Motion at 11; Kemnitzer Decl. at ¶ 8); see also Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 446 (E.D. Cal. 2013) ("The settlement, therefore, provides Class Members with another significant benefit that they would not receive if the case proceeded – certain and prompt relief."); In re Portal Software, Inc. Sec. Litig., 2007 WL 4171201, *3 (N.D. Cal. 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"); Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (quoting Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)). In short, the court finds that these factors support a finding that the Settlement Agreement is fair, adequate, and reasonable.

**2. The Risk of Maintaining Class Action Status Through Trial.**

Since plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement. See Gardner v. GC Services, LP, 2012 WL 1119534, *4 (S.D. Cal. 2012) (noting that "because settlement was reached prior to a hearing on Plaintiff's motion for class certification, settlement was reached at a time when there was still a risk that the class would not be certified by the Court.").

**3. The Amount Offered in Settlement.**

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the Settlement Agreement, the court concluded that "the total settlement amount and benefits is an exceptional recovery for the class." (Court's Order of December 29, 2014, at 19). Accordingly, this factor also

weighs in favor of granting final approval.

### 4. The Extent of Discovery Completed and Stage of Proceedings.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527 (internal quotation marks and citation omitted). The court previously examined these factors at length and determined "that the settlement was reached through arms-length negotiations, (see Court's Order of December 29, 2014, at 16), following two mediation sessions before an experienced mediator. (See id.). Given prior litigation relating to whether a prior version of defendant's NOI complied with the Rees-Levering Act, plaintiffs were able to rely upon the extensive discovery conducted in the earlier case, including the deposition of Ehlinger, DT Credit's secretary and general counsel. (See id. at 17). Plaintiffs also obtained statistical information from DT Credit. (See id. at 9 & 17). The parties therefore entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Linney, 151 F.3d at 1239 ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (internal quotation marks omitted); Clesceri v. Beach City Investigations & Protective Services, Inc., 2011 WL 320998, *9 (C.D. Cal. 2011) (same). This factor also warrants approval of the settlement.

### 5. The Experience and Views of Counsel.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted). Plaintiffs contend that class counsel are "experienced in class actions in general and NOI class actions in particular[.]" (Settlement Motion at 11; see Kemnitzer Decl. at ¶ 2; Declaration of Bryan Kemnitzer in Support of Motion for

10

Attorneys' Fees, Costs and Expenses ("Kemnitzer Fees Decl.") at ¶¶ 11 & 23; Barron Decl. at ¶ 2). Class counsel believe the "settlement is an excellent result," (Kemnitzer Decl. at ¶ 13; Barron Decl. at ¶ 5 (calling the result "extraordinary . . . under the circumstances"), and should be approved. (Id.). Based on these representations and supporting evidence, the court finds that this factor supports approval of the Settlement Agreement.

      **6.    The Presence of a Government Participant**.

There is no government participant in this matter. Accordingly, this factor is not relevant. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

      **7.    The Reaction of Notified Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, only 12 class members requested exclusion, and significantly, there were no objections to the settlement. (See Pappas Decl. at ¶¶ 13-14). The lack of objections and limited exclusions support approval of the settlement. See, e.g., Franco v. Ruiz Food Products, Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when out of the 2,385 class members, there were no objections and only 56 class members opted out).

    E.    <u>Whether the Settlement is the Product of Collusion</u>.

Because the parties negotiated and reached a settlement prior to formal certification of the class, the court must ensure that the settlement was not the product of collusion. See Bluetooth, 654 F.3d at 947-48. In granting preliminary approval of the settlement, the court carefully

1  scrutinized the settlement and concluded that "the parties' settlement was reached through arms'-
2  length negotiations [and t]here is no evidence of collusion or fraud leading to, or taking part in, the
3  settlement negotiations between the parties." (Court's Order of December 29, 2014, at 16). The
4  court based its determination, in part, on the discovery conducted in prior litigation, and the use
5  of a private mediator. (See id. at 16-17).

6  With respect to "signs" of collusion, the court notes that, unlike Bluetooth, where the class
7  received no monetary award, class members here will be receiving monetary relief and the
8  extinguishment of over $70 million in deficiency balances. (See Settlement Agreement at §§
9  5.02(b) & 5.03(a); Settlement Motion at 7-8). Moreover, pursuant to the Settlement Agreement,
10 no funds will revert to defendant. (See Settlement Agreement at § 5.07; Settlement Motion at 8).
11 In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product
12 of collusion.

13  F.  Cy Pres Designee.

14  The Settlement Agreement provides that the residue of any un-cashed checks issued to
15 class members pursuant to the terms of the Settlement Agreement will be distributed, subject to
16 the court's approval, to Public Counsel of Los Angeles ("Public Counsel"), as a cy pres recipient.
17 (Settlement Agreement at § 5.07). Plaintiffs request that the court approve the cy pres distribution
18 of unclaimed funds to Public Counsel. (See Settlement Motion at 20-21).

19  Courts may approve cy pres distributions if there is "a driving nexus between the plaintiff
20 class and the cy pres beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012)
21 (internal quotation marks and citation omitted). A cy pres award must be "guided by (1) the
22 objectives of the underlying statute(s) and (2) the interests of the silent class members, and must
23 not benefit a group too remote from the plaintiff class[.]" Id. (internal quotation marks and citations
24 omitted).

25  Here, class counsel represents that Public Counsel is "engaged in activities that would
26 promote the purposes for which this litigation was brought, namely the enforcement of consumer
27 protection statutes for low income Californians." (Barron Decl. at ¶ 10). Public Counsel "is the
28 largest pro bono law firm in the nation[,]" (id., Exh. 3 at P1), and its work "impact[s] a wide

spectrum of people who live at or below the poverty level." (Id. at P2). The court finds that Public Counsel's work with respect to consumer issues on behalf of low-income individuals provides the requisite nexus to the interests of the class members, the nature of their claims, and the purpose of the underlying statutes, and thus qualifies as the next best distribution to the class.

II.  AWARD OF ATTORNEY'S FEES AND COSTS AND SERVICE AWARDS.

A.  Attorney's Fee Award.

Class counsel seek an award of $125,000 in fees and costs. (See Fees Motion at 1). The Settlement Agreement provides that subject to court approval, defendant "agrees to pay Class Counsel the amount of their actual fees, costs and expenses incurred in connection with this matter and, in no event, shall that amount exceed $125,000.00." (Settlement Agreement at § 5.08).

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth, 654 F.3d at 941. However, "since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the court need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated." Staton, 327 F.3d at 966.

In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. See Mangold v. Cal. Public Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees."). In California, the reasonableness of the requested fees is determined using the lodestar method, where the attorney's fees are calculated by multiplying the number of

hours reasonably expended in representing a client by a reasonable hourly fee.[4] See PLCM Grp. v. Drexler, 22 Cal.4th 1084, 1095 (2000) ("[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."); see also McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009) ("A district court acts within its discretion in awarding fees when the amount is reasonable and the court fully explains its reasoning in making the award. Typically, a district court begins it [sic] calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate."); Gates, 987 F.2d at 1397 ("The starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.").

As an initial matter, the court notes that class counsel's fee request of $125,000 is less than their lodestar of $173,055.00, (see Fees Motion at 7), which represents a multiplier of 68 percent. (See id. at 8). After reviewing the hourly rates and hours expended in this case by class counsel, (Kemnitzer Fees Decl. at ¶¶ 6-40 & Exhs. A & B; Supplemental Declaration of Bryan Kemnitzer in Support of Motion for Attorneys' Fees, Costs and Expenses at Exhs. A & B), the court finds that the amount requested by class counsel is reasonable.

B.  Class Representatives Service Awards.

Pursuant to the Settlement Agreement, plaintiffs request that the court grant a service award of $2,500 to each class representative. (See Fees Motion at 11; Settlement Agreement at § 5.06).

In the Court's Order of December 29, 2014, the court undertook a thorough examination of the fairness and adequacy of the service awards at issue, applying the careful scrutiny required

---

[4] A fee applicant has the burden of "documenting the appropriate hours expended[.]" Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983). "Counsel for the prevailing party should . . . exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Id. at 434, 103 S.Ct. 1939-40. In turn, the district court "should exclude from this initial fee calculation hours that were not reasonably expended." Id. at 434, 103 S.Ct. 1939 (internal quotation marks omitted). In some circumstances, it is appropriate for the court to "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure[.]" Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992).

in this Circuit.  (See Court's Order of December 29, 2014, at 19-22); see Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement approval and instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives."); Staton, 327 F.3d at 948-49.  Based on its review of the record, the court determined "that the incentive awards are warranted based on plaintiffs' efforts to 'protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff[s] expended in pursuing the litigation.'" (Court's Order of December 29, 2014, at 21).  Moreover, no class member has objected to the requested incentive payments.  (See Pappas Decl. at ¶ 14) (stating that no objections to the settlement were received)).  The court therefore concludes the service awards requested by plaintiffs are fair and reasonable, and will be approved.

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' unopposed Motion for Final Approval of Class Action Settlement **(Document No. 40)** is **granted** as set forth herein.

2. The court hereby grants final approval to the parties' Revised Amended Settlement Agreement and Release ("Settlement Agreement") (Document No. 35-9).  The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's length and informed negotiations, and treats all members of the class fairly.  The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiffs' Motion for Attorneys' Fees, Costs and Expenses and Service Awards **(Document No. 38)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c):  All members of the class preliminarily approved on December 29, 2014, who did not properly and timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal

Rules of Civil Procedure 23(c)(2).

6. The court affirms the appointment of plaintiffs LaToya McCaleb and Gloria James as Class Representatives.

7. The court affirms the appointment of the law firm of Kemnitzer, Barron & Krieg, LLP as class counsel.

8. Plaintiffs LaToya McCaleb and Gloria James shall each be paid a service payment of $2,500 in accordance with the terms of the Settlement Agreement.

9. Class counsel shall be paid $125,000.00 in attorney's fees in accordance with the terms of the Settlement Agreement.

10. The court approves the designation of Public Counsel of Los Angeles, as the <u>cy pres</u> beneficiary of any unclaimed settlement funds pursuant to the Settlement Agreement.

11. All class members who did not validly and timely request exclusion from the settlement have released claims against defendant, as set forth in the Settlement Agreement.

12. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this court.

13. DT Credit Company, LLC by operation of state law shall be restrained from taking any further steps to collect Deficiency Balances assessed during the Settlement Class Period purportedly owed by any member of the Settlement Class. The parties waive any requirement of a bond of undertaking and none shall be required. No person who has notice of this Injunction shall fail to comply with it nor shall any person subvert the Injunction by sham, indirection or other artifice.

14. Without affecting the finality of this order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the order and Judgment, as well as the Settlement Agreement itself.

15. Judgment shall be entered accordingly.

Dated this 26th day of May, 2015.

/s/
Fernando M. Olguin
United States District Judge